LEMMON, Judge.
Maurice J. Fontenot filed a suit to recover damages that he sustained in an automobile accident. Made defendants were Leon C. Steenocker, Sr., whose minor son *60 drove the car that collided with Fontenot, and Steenocker’s liability insurer. After a trial on the merits, Fontenot’s suit was dismissed, and he appealed.
Fontenot testified that on September 30, 1967 at about S :40 P.M. he was driving his car in the right hand (shoulder) lane of U. S. Highway 61 (Airline Highway) in Jefferson Parish. The weather was clear and dry, and the traffic was heavy. As he approached the intersection of Howard Avenue, he signaled with his directional signal lights for a right hand turn and slowed in preparation for the turn. When he began the turn upon reaching the intersection, he noted a lady pedestrian crossing Howard Avenue in his path, about IS to 20 feet ahead of him. As he saw her, she also saw him and began running. He applied the brakes and slowed his vehicle further, but did not stop it, whereupon his car was struck in the left rear at the tail light by the right front of Steenocker’s car.
On the other hand, Steenocker testified that he was also traveling north in the same lane, headed for an L.S.U. football game in Baton Rouge. Plis stated speed of 40 miles per hour was five miles below the posted limit. He estimated that he was following about four car lengths behind the Fontenot car. When he noticed Fontenot turning, he partially applied his brakes and edged closer than the previous four car length interval. When Fontenot stopped upon the highway before completing his turn, Steenocker applied his brakes fully and slid into the rear of the Fontenot vehicle. He was unable to veer to his left because of traffic in the adjacent lane. Both cars sustained light damage.
Steenocker denied that Fontenot signaled for a turn, but he did see the brake light flash. He stated that he had expected Fontenot to clear the intersection, but when Fontenot stopped, the left rear of his car was still on the highway. Steenocker also denied seeing a pedestrian.
The investigating officer testified that Fontenot stated after the accident that he had to apply his brakes to slow down because a pedestrian crossed in front of his car. The trooper found debris in the right hand lane.
After reviewing the facts established by the record, we believe that the trial court erred in finding Fontenot negligent because he made a sudden and unannounced stop in the road. While the trial court doubted Fontenot’s veracity on several points, we believe that Steenocker’s actions, as shown by his own testimony, constituted the negligence which caused this accident. He testified that he partially applied his brakes when he saw Fontenot turning. Thus he was apparently not confronted with an emergency situation because of the turn itself and was aware of the maneuver in sufficient time to control his vehicle.
At this point Steenocker was still obliged to keep a safe distance behind the preceding vehicle (R.S. 32:81), but did not do so. When Fontenot was confronted with a pedestrian crossing his path and thus compelled to slow his car further (or to stop it), Steenocker was following too close to control his vehicle so as to prevent a collision.
The duty of a motorist to keep a safe distance behind a preceding vehicle is imposed to prevent a collision if the preceding vehicle is required to suddenly slow or stop on the highway. We conclude that Steenocker’s violation of this duty was the cause of the accident.
On the other hand, Fontenot’s slowing (or stopping) while partially on the highway, while also a cause of the accident, was not negligent under the circumstances, but was reasonable because of the pedestrian obstructing his path of travel. The trial court placed great emphasis on Fonte-not’s statement that he probably would not have hit the pedestrian had he continued forward at the same rate of speed, but we view this as a conjectural answer to a spe *61 cific question and as an unimportant consideration in determining whether Fontenot was reasonable in taking the action he did.
As to damages, Fontenot was not aware of any injury immediately after the accident, which occurred on a Saturday. That night his neck began to swell on both sides. When the condition failed to improve the next day, he consulted a general practitioner, who diagnosed sprain of the cervical, superior thoracic and lumbar areas. He prescribed medicine for pain and for relaxing the muscles, and he also administered a physical therapy program, including diathermy and microtherm treatments.
When the pain persisted over the next two months, the doctor twice increased the strength of the medication and finally referred the patient to a neurosurgeon on November 20, 1967. This specialist found no neurological deficit, but did find mild to moderate spasm in the right lateral cervical muscle group and diagnosed sprains of the muscles and ligaments in the cervical area. He referred the patient back to the general practitioner for further treatment and encouraged him to continue the physical therapy program. His prognosis was that Fontenot would be able to comfortably perform his normal activities in six to eight weeks. However, at trial he stated that persistence of symptoms for a longer period did not surprise him.
In early December Fontenot’s condition began to improve, but his treatment was continued on a regular basis. On March 27, 1968 he was much improved. He was seen monthly thereafter through August, primarily for cervical complaints, and physical therapy was administered during this time but less frequently than in the earlier treatment. He sought no further medical attention after August. He was never hospitalized nor placed in traction, nor was any brace or support ever used. There was no testimony as to permanent disability.
Defendants allege that Fontenot was “overtreated” and that they were prejudiced because their requests for a medical examination prior to trial were denied. After suit was filed, Fontenot was no longer under treatment. An order for physical examination can be obtained after a hearing upon motion for good cause shown (C.C.P. art. 1493), and this order can be issued prior to filing of a suit if a failure or delay of justice would otherwise result (C.C.P. art. 1434). See also Vaughn v. Commercial Union Insurance Co. of N. Y., 263 So.2d SO (La.App. 4 Cir. 1972), handed down this day. Therefore, the defendants could have, but did not, seek a court order for a medical examination.
We believe that an award of $3,000.00 will adequately compensate Fontenot for his pain and suffering. The following special damages are also awarded:
Medical treatment, physical therapy and neurological consultations $1,400.00
X-rays 210.00
Drugs (stipulated) 100.00
Automobile damage 282.78
Other special damages were not adequately proved.
For the foregoing reasons, the judgment of the district court is reversed, and judgment is rendered in favor of Maurice J. Fontenot and against Leon C. Steenocker, Sr. and Allstate Insurance Company in the sum of $4,992.78, plus legal interest thereon from date of judicial demand until paid and for all costs including the expert fees set by the trial judge.
Reversed and rendered.